UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| FEDERAL IDENTIFICATION CARD CO., INC. d/b/a PTM SPORT, | : |
| | : |
| | : BANKRUPTCY NO. 16-13496(AMC) |
| Debtor. | : |
| | : |

**MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §363 (I) PERMITTING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN CASH COLLATERAL, (II) AUTHORIZING PAYMENT OF PREPETITION WAGES, (III) REQUESTING AN EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(C)(1) AND E.D. PA. L.B.R. 5070(F) AND FOR (IV) RELATED RELIEF**

Federal Identification Card Co., Inc. d/b/a PTM Sport (the "Debtor" or "PTM Sport") by and through proposed counsel, Ciardi Ciardi & Astin, hereby requests an order granting authority to (I) use Cash Collateral and Provide Adequate Protection to Parties with Interest in Cash Collateral, (II) pay Prepetition Wages, (III) request an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedure 9006(c)(1) And E.D. Pa. L.B.R. 5070(f), and for (IV) related Relief (the "Motion") and in support thereof, respectfully represents:

## JURISDICTION

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

1

## BACKGROUND

2. On May 16, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to title 11 of chapter 11 of the United States Code, as Amended (the "Bankruptcy Code").

3. No trustee or examiner has been appointed in this Chapter 11 case. As of today's date, no creditors' committee has been appointed in this Chapter 11 case by the United States Trustee.

4. Since 1975, PTM Sport has been a leader in screen printing apparel and accessories. With the addition of embroidery equipment and digitizing in 2007, its ability to serve every customer's needs with any size order faster than the competition is the hallmark of nationwide success.

5. PTM Sport's 16,000 square foot facility is located in Drexel Hill, Pennsylvania. PTM Sport assists clients with creating the recognition their companies deserve with quality promotional products used for marketing their brands. Every order receives the same attention to detail. Each client receives the highest commitment to service. PTM Sport serves Fortune 500 companies as well as local businesses, schools, clubs and families. Its commitment to quality, exceptional customer service, and competitive pricing in conjunction with its state of the art production capabilities make PTM Sport the best choice for promotional product needs.

6. As of the Petition Date, the Debtor has approximately 22 employees and pays approximately $14,136.99 in gross payroll per pay period.

7. Prior to the Petition Date and in order to continue operations, the Debtor entered into four (4) revenue based factoring agreements with the following factoring agents:

2

    (a)    Capital Stack, LLC purchased $42,000 of the Debtor's receivables for $30,000 on October 28, 2015.

    (b)    Funding Metrics, LLC d/b/a Lendini purchased $26,000 of the Debtor's receivables for $18,000 on January 5, 2016.

    (c)    Azadian Group, LLC purchased $33,500 of the Debtor's receivables for $25,000 on March 28, 2016.

    (d)    TVT Capital purchased $74,500 of the Debtor's receivables for $50,000 on December 18, 2015.

    (e)    Main Street Business Funding, LLC purchased a portion of the Debtor's receivables for $10,000 on February 3, 2016 on a revolving basis.

In addition, SA Acquisition, LLC, the successor to Nova Bank, filed a UCC-1 against the Debtor's cash and accounts but it was subsequently terminated. Finally, in the week prior to the Petition Date, PTM Promotional, LLC, the proposed buyer of substantially all of the Debtor's assets and good will, provided a $54,000 loan to the Debtor secured by the Debtor's cash, accounts, equipment, and general intangibles. PTM Promotional, LLC has a further interest in cash collateral as the assignee of the loan and security instruments from Capital Equipment Solutions, LLC. The principal balance of that loan is approximately $156,000. Capital Stack, LLC, Lendini, Azadian Group, LLC, TVT Capital, Main Street Business Funding, LLC, SA Acquisition, LLC, and PTM Promotional, LLC will be collectively referred to throughout the Motion as the "Lenders" and the Debtor takes no position as to which of the Lenders is in first position on the Debtor's cash and accounts.

8. The Debtor therefore does not dispute that the Lenders' may have liens on all of the Debtor's accounts and cash up to the value of their respective claims. The amount of each lien, its priority, and whether a proper security interest was obtained is subject to dispute.

## RELIEF REQUESTED

9. The Debtor requires use of its cash and accounts to continue operations of its business.

10. Section 363(c) of the Bankruptcy Code allows a debtor to use, sell or lease cash collateral if each entity that has an interest in cash collateral consents or the Court authorizes the use. See 11 U.S.C. §363(c)(2).

11. The Debtor has prepared a budget (the "Budget") detailing its proposed use of cash collateral from May 16, 2016 through May 31, 2016. This budget is attached hereto as **Exhibit "A."**

12. The continued use of cash collateral will allow the Debtor to continue operating, continue serving its customers and continue paying its employees so that the Debtor can continue with the proposed reorganization by selling substantially all of its assets and proposing a plan to satisfy the claims of creditors.

13. Moreover, the Debtor proposes to provide adequate protection to the Lenders, and any other party asserting a lien on cash or accounts, in the form of a replacement lien of the same extent, priority and validity as existed pre-petition.

14. The Debtor believes that the request to use cash collateral is proper, reasonable and necessary to continue the Debtor's operations.

4

15. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

16. In order to maintain the Debtor's operations and serve existing clients, the Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in Budget. Through the payment of the expenses detailed in the budget, the Debtor will be able to maintain the status quo while also facilitating its reorganization and enhancing the collateral.

17. Finally, to maintain employee morale and preserve the Debtor's workforce at this critical time, to reduce the disruption caused by the bankruptcy filing on the Debtor's business operations, and to minimize the personal hardship the Debtor's employees will suffer if its employee-related obligations are not paid when due, the Debtor requests entry of an order authorizing, but not requiring, the Debtor (a) to pay, in the ordinary course of business, all prepetition employee compensation and employee benefits earned from May 9, 2016 through and including May 13, 2016; (b) to honor and take all necessary actions to continue in the ordinary course of business until further notice (but not to assume), certain employee-related programs, policies and plans that were in effect as of the filing of these chapter 11 cases; and (c) to make, in the ordinary course of business, all normal and customary deductions and withholdings and pay all taxes associated with the Debtor's obligations to employees.

18. By this motion, the Debtor does not seek authorization to assume any contracts relating to senior executives currently employed by the Debtor. Further, the Debtor does not seek to pay any pre-petition compensation or other amounts to executives, amounts due in connection with the continuation of the employee benefits described herein, and expense reimbursement amounts, all in accordance with existing plans, policies, and programs.

19. As of the Petition Date, the Debtor employed approximately 22 employees (the "Employees"). In the ordinary course of business, the Debtor issues payroll checks on a weekly basis, totaling approximately $14, 136.99 in gross wages per week.

20. The Debtor's next payroll is scheduled to occur on Friday, May 20, 2016. As of the Petition Date, the Debtor estimates that it owes its employees approximately $14,136.99 in unpaid, gross wages accruing from May 9, 2016 through May 13, 2016 (the "Unpaid Compensation"). Items of Unpaid Compensation were outstanding on the Petition Date because the Debtor's next scheduled payment disbursement is not until May 20, 2016 for the pay period ending May 13, 2016.

21. The Debtor hereby seeks authority to pay Unpaid Compensation accruing from May 9, 2016 through May 13, 2016. The Debtor does not believe that the Unpaid Compensation payable to any one employee exceeds $10,950. No officer or shareholder will receive unpaid pre-petition compensation but will be paid for post-petition services.

22. The Debtor maintains various plans and policies to provide employees with medical, dental, drug prescription, life and accidental death or dismemberment insurance, retirement savings, workers' compensation and other similar benefits (collectively the "Employee Benefits"). The Debtor wishes to continue offering the Employee Benefits to the Employees and their families. Any failure to pay the Employee Benefits would be injurious to employee welfare, morale and expectations. The Debtor is current on monies owed under the various Employee Benefit programs.

23. The Debtor does not believe, at present, that any of its employees are owed aggregate amounts for services rendered prior to the Petition Date in excess of the $10,950

6

Case 16-13496-amc Doc 8 Filed 05/17/16 Entered 05/17/16 14:16:39 Desc Main
Document Page 7 of 11

amount to which such employees would be entitled with administrative priority under section 507 of the Bankruptcy Code. The Debtor urges the Court to approve the payment of the amounts owed to the Debtor's employees, given the critical nature of the employees to the Debtor's businesses, as stated above. The Debtor believes that failure to pay the employees for their pre-petition services in full would have grave consequences for the Debtor's ability to function in the future.

24.     The Debtor hereby seeks authority to pay all Employee Benefits in the ordinary course of business. The Debtor also seeks authority to continue the Employee Benefits programs after the Petition Date.

25.     As a result of the commencement of these chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its prepetition obligations regarding Unpaid Compensation and Employee Benefits (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

26.     Accordingly, pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, the Debtor seeks authority to; (i) pay its outstanding Prepetition Employee Obligations; and (ii) continue its practices, programs and policies in effect as of the Petition Date with respect to the Prepetition Employee Obligations. The Debtor further requests that the Court authorize and direct the bank at which the Debtor maintains the account from which the Debtor's payroll obligations are disbursed, to honor and pay all prepetition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the

Debtor in respect of the Prepetition Employee Obligations. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the bank. The relief requested herein is essential and necessary to the Debtor's continued operations in chapter 11 and to an effective reorganization.

27.     The payment of the Prepetition Employee Obligations is justified under Section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." The Debtor believes that the amounts they seek to pay are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions.

28.     Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); Gregg v. Metro. Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized); In re Chateaugay Corp., 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay prepetition wages, salaries, expenses and benefits); In re Gulf Air, Inc., 112 B.R. 152, 153-54

8

(Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

29.     The continued operation of the Debtor's business depends on the retention and motivation of its Employees. The Debtor believes that, to avoid employee resignations and to maintain employee morale, it is critical that it be authorized to pay each of its Employees all compensation amounts that have been earned under the Debtor's prepetition contractual obligations or practices.

30.     It is equally essential that the Debtor take all actions reasonably necessary to continue on an uninterrupted basis in the ordinary course of business all of the employment policies that were in effect prior to the Petition Date. Payment of these obligations and the continuation of all of these programs and policies are essential to ensure that the Debtor retain its employees and maintain employee morale.

31.     Moreover, the Debtor estimates that the amounts its seeks to pay herein are entitled to priority under Sections 507(a)(3) and (a)(4) of the Bankruptcy Code, with very few conditional exceptions. Section 507(a)(3) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within ninety days before the filing of the applicable petition up to $10,950 per employee. Similarly, section 507(a)(4) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $10,950, less any amounts paid pursuant to Section 507(a)(3) of the Bankruptcy Code.

32. Thus, granting the relief sought herein would affect only the timing and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial and health-related problems if the Debtor is not permitted to pay certain of the unpaid expenses and Prepetition Employee Obligations, particularly wages and other Employee Benefits. Moreover, the Debtor believes that if it is unable to honor the Prepetition Employee Obligations, employee morale and loyalty will be jeopardized at a time when it is most critical. If the Debtor is not authorized to pay for the Employee Benefits, then many of the Employees may not be reimbursed or otherwise have their health benefit claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed, and may face having their health care services terminated. The Debtor believes that such uncertainty will cause significant anxiety at precisely the time the Debtor needs its Employees to perform their jobs at peak efficiency.

## REQUEST FOR EXPEDITED CONSIDERATION

33. The Debtor requests expedited treatment in connection with the Motion because it requires the immediate use of cash collateral to fund ongoing operations mentioned in the Motion and, specifically, to pay payroll on May 20, 2016. Accordingly, the Debtor requests that a hearing on use of cash collateral through May 31, 2016 be held at the convenience of the Court but no later than May 19, 2016.

34. As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee and counsel for and/or representatives of the Lenders as well as the Debtor's Top Twenty Unsecured Creditors and Taxing Authorities. The Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate and all parties in interest that would ensue if the relief requested herein is not granted.

35. No previous request for the relief sought herein has been made to this or any other Court.

36. Prior to filing this Motion, counsel for the Debtor contacted the Counsel for the Office of the United States Trustee and Counsel for and/or representatives of the Lenders to advise them of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

CIARDI CIARDI & ASTIN

*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Proposed Counsel for the Debtor

Dated: May 17, 2016